**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00146-REB

MICHAEL FISHER,

      Applicant,

v.

RICK RAEMISCH, Exec Director Colorado Dept of Corrections,[1]
JOHN DAVIS, Warden, Buena Vista Correctional Facility, and
JOHN SUTHERS, Attorney General, State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

---

Blackburn, J.

      This matter is before me on the **Application for a Writ of Habeas Corpus**

**Pursuant to 28 U.S.C. § 2254** ("Application") [# 1],[2] filed January 22, 2013, by

Applicant, through counsel.  On March 18, 2013, this action was dismissed with

prejudice by Senior Judge Lewis T. Babcock as barred by the one-year limitation period

set forth in 28 U.S.C. § 2244(d)(1).   On appeal, the United States Court of Appeals

reversed and remanded the case for further proceedings.  *See Fisher v. Raemisch*, 762

F.3d 1030  (10th Cir. Aug. 5, 2014).   The Tenth Circuit issued the mandate on August

---

[1]Pursuant to Fed. R. Civ. P. 25(d), Rick Raemisch, the current Executive Director of the Colorado Department of Corrections (CDOC), has been substituted for Tom Clements, the former CDOC Executive Director.

[2]"[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

27, 2015 [# 17], and the action was reinstated in this Court on August 29, 2014. [# 18].

Respondents thereafter answered the Application [# 24], and Applicant filed a traverse

[# 31].  After reviewing the pertinent portions of the record in this case including the

Application, the Answer, the Traverse, and the state court record, I conclude that the

Application should be denied.

## I.  BACKGROUND

Applicant was convicted by a jury of felony murder, aggravated robbery, and

conspiracy to commit aggravated robbery in Adams County District Court Case No.

96CR1640.  *See People v. Fisher*, 9 P.3d 1189, 1190 (Colo. App. 2000) (*Fisher I*).

The Colorado Court of Appeals summarized the relevant facts as follows:

> On September 19, 1996, defendant, his co-defendant, and a
> woman were using drugs and wanted to obtain more. Lacking the funds to
> do so, the defendant and co-defendant arranged to steal drugs from the
> victim. At trial, there was evidence the plan called for the use of a gun to
> intimidate the victim and then to take her drugs without payment. When
> the victim refused to turn over the drugs, she was shot and killed by the
> co-defendant.

*Id.*  Applicant was sentenced to a term of life imprisonment without the possibility of

parole.[3]  The judgment of conviction was affirmed on direct appeal.  *See Fisher*, 9 P.3d

at 1193.  On October 10, 2000, the Colorado Supreme Court denied Mr. Fisher's

petition for certiorari review. [# 7-5].

On October 1, 2001, Applicant filed, *pro se*, a motion for state post-conviction

relief pursuant to Colo. Crim. P. Rule 35(c) and counsel was appointed.

---

[3] *See* State Court R., 1/15/98 Hrg. Tr. at 83.

[ ## 1-2 & 7-1 at 17].  The state district court eventually held an evidentiary hearing and denied the Rule 35(c) motion on November 18, 2009.  [ # 7-1 at 10-11; # 7-3].  The Colorado Court of Appeals affirmed the trial court's order.  *See People v. Fisher*, No. 09CA2727 (Colo. App. Apr. 19, 2012) (unpublished) (*Fisher II*).  [# 1-8].  On October 15, 2012, the Colorado Supreme Court denied Applicant's petition for certiorari review.  [# 7-2].

Applicant initiated this action on January 22, 2013.  He asserts two claims in the Application: (1) that his Sixth Amendment right to counsel was violated because his attorneys labored under an actual conflict of interest; and, (2) his right to due process was violated because the jury instruction on complicity failed to apprise the jury of the requisite mental state for the crime of accomplice to felony murder. [# 1, at 20, 24].

In a Pre-Answer Response, Respondents argued that the Application was untimely and that there was no basis for equitable tolling. [# 7 at 6-12].  Respondents conceded, however, that Applicant exhausted available state court remedies for his claims. [*Id.* at 18-21].

As discussed above, this action was dismissed as untimely on March 18, 2013. [# 9].  Following reversal and remand by the Tenth Circuit, the case was drawn to the undersigned.  I address below the merits of Applicant's claims under the deferential AEDPA standard of review.

## II.  LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court

at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case *sub judice*.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. at 101 (internal quotation marks and citations omitted).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct.

1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103. *See also White v. Woodall*, 134 S. Ct. 1697 (2014) (citing and

quoting *Richter*).

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## III.  MERITS OF THE CLAIMS

### A.  Claim One

Applicant claims that his Sixth Amendment right to counsel was violated because trial counsel labored under an actual conflict of interest.  Specifically, Applicant asserts that while he was represented by attorneys from the Brighton office of the Colorado Public Defender (CPD), the Denver office of the CPD represented a witness endorsed by the prosecution in an unrelated case.  [# 1 at 20].

#### 1.  applicable legal standards

The Sixth Amendment right to counsel is a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, the ineffective assistance of counsel is demonstrated where: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Id.* at 687-88.  Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Id.* at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*

7

An exception to the two-part showing required under *Strickland* arises, and the ineffectiveness of counsel is presumed where counsel "'actively represented conflicting interests' and 'an actual conflict of interest adversely affected [the defense] lawyer's performance.'" *Id.* at 692 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)).  To trigger Sixth Amendment concerns, there must be more than a potential conflict of interest or "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

However, the Supreme Court has not applied *Cuyler's* presumption of prejudice outside the context of defense counsel's concurrent representation of multiple defendants in the same criminal proceeding. *See Mickens*, 535 U.S. at 176 (stating that it is "an open question" whether the holding in *Cuyler* applies outside the context of concurrent, multiple representation).  *See also Benge v. Johnson*, 474 F.3d 236, 244-45 (6th Cir. 2007) (". . . [*Cuyler*] covers only cases of 'joint representation at trial'"; no clearly established federal law prohibits representation of defendant and a prosecution witness in two different, unrelated and non-simultaneous proceedings); *Phillips v. United States,* 668 F.3d 433, 436 (7th Cir. 2012) (assuming that defense counsel's prior representation of a prosecution witness created a conflict of interest, "such conflict was not the sort of conflict that makes legal representation automatically 'ineffective[;]' [p]rejudice must be shown"); *Beets v. Scott,* 65 F.3d 1258, 1265 (5th Cir. 1995) ("The Supreme Court has not expanded [*Cuyler's*] presumed prejudice standard beyond cases involving multiple representation. . . .").  Accordingly, a habeas petitioner asserting a conflict of interest claim that does not involve concurrent representation of multiple defendants must

satisfy the *Strickland* prejudice standard.  *See Benge*, 474 F.3d at 245; *Phillips*, 668 F.3d at 436; *Beets*, 65 F.3d at 1272.

### 2. state court proceedings

### a. district court

Applicant asserted his conflict of interest claim in a state post conviction motion filed pursuant to Colo. Crim. P. Rule 35(c).  The state district court held an evidentiary hearing, at which the defense attorneys testified.[4]  Following the hearing, the state district court entered a written order.   In *Fisher II*, the Colorado Court of Appeals summarized the trial court's findings as follows:

> . . . [A]t the time the prosecution endorsed M.S. as a witness, M.S. was being represented by the public defender's Denver regional office in another matter. Also, M.S. had previously been represented by attorneys from the Brighton and Golden regional public defender's offices. The court found, however, that defendant's trial counsel had never represented M.S., M.S. "never shared any confidences" with them, and the trial attorneys did not have access to M.S.'s files from "any of the Denver or Jefferson County cases."

[# 1-8, at 6].[5]

In addition,

> The trial court found credible the testimony of defendant's trial counsel regarding their reasons for deciding not to impeach M.S.'s testimony, which counsel viewed as consistent with the defense theory, by bringing out his prior felony convictions.

[*Id.* at 6-7]. [6]

---

[4] *See also* State Court R., 4/17/09 and 11/13/09 Hrg. Transcripts.

[5] State Court R., Court File at 389,391-392.

[6] M.S. refers to prosecution witness Mark Serratore.  At trial, M.S. invoked his privilege against self-incrimination.  *See id.* 1/14/98 Trial Tr. at 36-37.  The trial court found M.S. unavailable, and the prosecution elicited M.S.'s prior statements through a detective.  *Id.* at 36-38, 47-48, 64-67.

After reviewing the pertinent Colorado case law, the state post conviction court

determined the following:

> Analytically, when the Court reviews the foregoing authority, the
> Court is compelled to conclude that no disqualifying conflict of interest
> existed in this case.  First, neither attorney that represented the Defendant
> in this case had represented Mr. Serratore. Second, the offices
> representing Mr. Serratore were geographically distant from the Brighton
> office and the one case in which the Brighton office had been involved in
> the representation of Mr. Serratore had terminated that representation
> several years before and neither attorney, on the evidence presented, had
> access to the confidences of their former client.

> Although trial counsel acknowledged a potential conflict of interest,
> the Court finds and concludes that the potential conflict did not rise to the
> level of an actual conflict of interest requiring a waiver.  The Court makes
> this finding for several reasons.  First, the prior representation by the
> Brighton office was remote in time.  Second, the witness' statements were
> ambiguous and not inconsistent with the defense theory.  Third, trial
> counsel effectively cross-examined the officer bringing out exculpatory
> evidence.  Fourth, there was other overwhelming evidence of the crime,
> including the Defendant's statements, independent of the other witness'
> statement, making the statement a collateral issue in the overall trial
> proceeding. Fifth, the evidence presented at this hearing established that
> the Defendant's trial counsel exercised clearheaded advice to the
> Defendant based upon the strong evidence against, uninfluenced by any
> external considerations. . . .

> The Court finds and concludes that the Defendant has not met his
> burden of proof, the Court finds that not even a mere possibility of a
> conflict has been demonstrated by the evidence.  No Sixth Amendment
> violation has been established.  Cuyler v. Sullivan, 446 U.S. 335, 350, 100
> S.Ct. 1708 (1980).[7]

### b.  Colorado Court of Appeals

In *Fisher II*, the state appellate analyzed Applicant's conflict-of-interest claim

under the following legal principles:

---

[7]State Court R., Court File at 389, 400-401.

The right to conflict-free counsel is encompassed within a defendant's Sixth Amendment right to effective assistance of counsel. *People v. Shari*, 204 P.3d 453, 457 (Colo. 2009); *People v. Harlan*, 54 P.3d 871, 879 (Colo. 2002). However, the mere possibility of a conflict is insufficient to establish a Sixth Amendment violation. *Shari*, 204 P.3d at 457; *People v. Castro*, 657 P.2d 932, 943 (Colo. 1983).
. . .

However, the mere existence of such a conflict is not dispositive of a defendant's right to postconviction relief. Rather, when the issue is raised for the first time in a Crim. P. 35(c) proceeding, the defendant "can prevail on an ineffective assistance of counsel claim, without having to prove prejudice, by showing that an actual conflict of interest adversely affected trial counsel's performance." *Dunlap* [*v. People*], 173 P.3d [1054,] 1073 [(Colo. 2007)] (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)).  To make this showing, the defendant must point to specific instances in the record that suggest actual impairment of his or her interest. *People v. Kenny*, 30 P.3d 734, 745 (Colo. App. 2000). "More specifically, the defendant must identify something that counsel chose to do or not do, as to which [counsel] had conflicting duties, and must show that the course taken was influenced by that conflict." *Id.* (quoting *Vance v. Lehman*, 64 F.3d 119, 124 (3d Cir. 1995)); *see also People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) (although there was a potential conflict of interest between defendant and counsel, there was no basis for finding an actual conflict of interest that adversely affected counsel's performance).

[# 1-8, at 3-5].

The state appellate court then concluded that the following factual findings made

by the district court "were amply supported by the record." [*Id.* at 10].

Specifically, trial counsel R.J. testified that he had never heard of M.S. before M.S. was endorsed as a witness in defendant's case, that he felt no loyalty to M.S., and that he considered himself free to ask M.S. any questions as long as the questions were not based on anything learned from the public defender files or from talking with M.S.'s counsel. The "conflict memorandum" prepared at the time of trial, according to R.J., evidenced counsel's view that, even if a potential conflict was present, there was no actual conflict that would have any effect on their representation of defendant.

R.J. and his co-counsel, C.M., also explained the defense strategy and how their election not to impeach M.S. with his prior felonies was consistent with that strategy. Neither counsel remembered having spoken

with M.S. in the past or having received any confidential information concerning M.S.'s other cases.

[*Id.*].[8]

The Court of Appeals affirmed the district court's order, concluding that Applicant had failed to demonstrate an actual conflict of interest that adversely affected the defense attorneys' representation of him. [# 1-8, at 10-11].

### 3.  application of AEDPA standard of review

As an initial matter, I find and conclude that the Colorado Court of Appeals' decision could not have been contrary to or an unreasonable application of, *Cuyler* because Applicant does not assert that his trial attorneys represented him and a co-defendant in the same criminal case.  *See House*, 527 F.3d at 1018 (if there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1)).  However, even if the *Cuyler* standard applies to the facts of this case, I find that Applicant is not entitled to federal habeas relief.

First, the state post conviction court found that Applicant's trial attorneys had not ever represented M.S., or learned any confidences about him or his criminal cases from any other regional CPD office.  Further, Applicant's trial attorneys felt "no loyalty" to M.S.  Based on these facts, which are presumed correct, are supported by the state court record, and are not contested by Applicant, the state appellate court concluded reasonably that M.S.'s representation by other regional CPD offices presented a potential, rather than an actual, conflict of interest. [# 1-8, at 9].

---

[8] *See also* State Court R., 4/17/09 Hrg. Tr. at 25-104; 11/13/09 Hrg. Tr. at 5-40.

12

Second, Applicant has failed to show that the potential conflict had an adverse affect on counsel's representation.  Applicant suggested in the state post-conviction proceeding that his trial attorneys failed to impeach M.S.'s statement to the detective with M.S.' prior convictions because of counsel's loyalty to M.S.  I find no evidence in the record to support Applicant's contention.

A detective testified at trial as to M.S.'s statements because the trial court determined that M.S. was "unavailable."[9]  M.S. told the detective that after the victim was shot, he and Applicant burned the car in which the robbery and shooting occurred.[10]  One of Applicant's trial attorneys testified at the Rule 35(c) hearing that the defense wanted M.S.'s statement to be admitted into evidence through the detective because it was consistent with the defense strategy.[11]  The prosecution's evidence at trial would be that: Applicant planned the victim's meeting with the shooter (Applicant's co-defendant) and was present for the shooting; and, Applicant, the co-defendant, and M.S. were all friends who had a drug habit."[12]  Because defense counsel anticipated that Applicant would be convicted of something, the defense strategy was to separate Applicant from the co-defendant and to argue that unlike the co-defendant, Applicant was not violent and had only planned a theft from the victim – a crime that would not support a felony murder charge.[13]  Defense counsel further testified at the Rule 35(c)

---

[9]State Court R., 1/14/98 Trial Tr. at 36-38, 47-48, 64-67 .

[10]State Court R., 1/14/98 Trial Tr. at 47-48,64-67.

[11]*Id.*, 4/17/09 Hrg. Tr. at 64-66.

[12]*Id.* at 68, 70, 97*; see also* 1/13/98 Trial Tr. at 70-74.

[13]*Id.*, 4/14/09 Hrg. Tr. at 67-71, 85-87, 92, 96-97, 102-104 ; 11/13/09 Hrg. Tr. at 25, 35-36, 42.

haring that M.S.'s statement to the detective was not harmful to the defense strategy because it implicated Applicant only in burning the car after the shooting and M.S.'s other statements to the detective indicated that Applicant may have burned the car under pressure from the co-defendant and M.S.[14] Because defense counsel wanted the jury to hear M.S.'s statements to the detective, counsel saw no reason to impeach M.S.'s credibility with his prior felony convictions in unrelated cases.[15]

Defense counsel's testimony at the Rule 35(c) hearing refutes Applicant's contention that counsel felt a sense of loyalty to M.S. that caused counsel not to cross examine the detective as to M.S.'s prior felony convictions.  Moreover, Applicant has not pointed to any other clear and convincing evidence to support his assertion.

Applicant's other "adverse effect" arguments are equally unavailing.  He emphasized at the Rule 35(c) hearing that defense counsel did not attempt to interview M.S. until 2-3 weeks prior to trial, instead of listing M.S. on its initial witness interview list, prepared several months earlier.[16] However, as the state district court concluded, there is nothing unreasonable about interviewing a witness two to three weeks prior to trial, especially where the prosecution's endorsement listed M.S. as "at large."[17] Applicant fails to explain how the timing of the witness interview affected counsel's representation.

---

[14] *Id.*, 1/14/98 Trial Tr., at 64-66; 4/17/09 Hrg. Tr. at 66-69, 102.

[15] *Id.*, 4/17/09 Hrg. Tr. at 86-87; 11/13/09 Hrg. Tr. at 35-36, 70, 86-87.

[16] State Court R., 4/17/09 Hrg. Tr. at 33-35, 53-54; 11/13/09 Hrg. Tr. at 15, 19-20.

[17] *Id.*, 11/13/09 Hrg. Tr. at 119-20, 131-32.

Next, Applicant contended in the state post conviction proceeding that defense counsel failed to examine the detective about a deal M.S. made with the prosecution in exchange for his cooperation in Applicant's criminal case.[18]  However, the trial transcript of defense counsel's cross examination directly refutes this assertion.[19]

Applicant's final contention in the state post-conviction proceeding was that defense counsel had a "personal interest" in not disclosing the potential conflict resulting from M.S.'s involvement in this case because of an "appearance of impropriety" that may have resulted in disciplinary sanctions.[20] [# 1, at 13-14].  Once again, Applicant's contention is belied by the state court record, which shows that the conflict was potential only, and counsel denied having any concerns about professional disciplinary action.[21]

In sum, to the extent *Cuyler* applies, I find and conclude that the Colorado Court of Appeals' determination that Applicant failed to establish an actual conflict of interest that adversely affected counsel's performance comported with Supreme Court law and is supported by the evidence presented in the state court proceeding. *See*, *e.g.*, *Phillips*, 668 F.3d at 436 (in the absence of evidence that defense counsel learned privileged information while representing prosecution witness in prior, unrelated proceeding, such that cross-examination of witness might be limited, there was "not the smallest reason to believe" any conflict adversely affected counsel's performance); *Jones v. Polk*, 401 F.3d 257, 267-68 (4th Cir. 2005) (state courts reasonably rejected *Cuyler v. Sullivan*

---

[18] *Id.*, 4/17/09 Hrg. Tr. at 22.

[19] *Id.* at 91-92.

[20] State Court R., 11/13/09 Hrg. Tr. at 129-30.

[21] *Id.*, 4/17/09 Hrg. Tr. at 46-47.

claim, where applicant failed to show how defense counsel's concurrent representation of a prosecution witness in an unrelated domestic relations matter actually conflicted with his representation of applicant; there was no evidence counsel learned privileged information limiting his cross-examination of the witness, and counsel gave strategic reasons for not crossing witness on certain subjects).

I further find and conclude that the state appellate court's decision was not contrary to, or an unreasonable application of, the *Strickland* standard.  Although the Colorado Court of Appeals did not analyze Applicant's claim under *Strickland*, this Court is bound to uphold the state courts' decision rejecting Applicant's Sixth Amendment claim so long as the result was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).  Applicant has failed to establish that counsels' performance was deficient or that the outcome of his trial would have been different if not for the alleged potential conflict of interest.  *See Strickland*, 466 U.S. at 687-88.

As discussed above, M.S. was a tangential witness.  Even if defense counsel had conducted a more stringent cross examination of the detective concerning M.S.'s statements to the police, M.S. prior convictions, and any deal M.S. had been offered by law enforcement in exchange for his cooperation, Applicant does not explain how this additional questioning would have resulted in a reasonable probability of acquittal on the aggravated robbery and felony murder charges.  Because M.S. was not present when

the robbery and murder occurred, his statements could not possibly have exonerated the Applicant.[22]

In sum, because the Colorado Court of Appeals' decision did not run afoul of *Cuyler* or *Strickland*, and was supported by the evidence presented in the state court proceeding, Applicant is not entitled to habeas corpus relief for his first claim.

## B.  Claim Two

For his second claim, Applicant contends that his right to due process was violated because the jury instruction on complicity failed to apprise the jury of the requisite mental state for the crime of accomplice to felony murder. [# 1, at 24].

Jury Instruction No. 10 stated:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed.

2. Another person must have committed all or part of the crime.

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.

4. The defendant must have had the intent to promote or facilitate the commission of the crime.

5. The defendant must have aided, abetted, advised or encouraged the other person in the commission or planning of the crime.[23]

---

[22] *See* State Court R., 1/13/98 Trial Tr. at 90-115; 1/14/98 Trial Tr. at 47-50, 64-67, 140 .

[23] *See also* State Court R., Court File, Jury Instruction No. 10.

*See also* COLO.REV.STAT. (C.R.S.) § 18-1-603 (2015).[24]

Applicant asserts that the complicity instruction was deficient because the phrase "all or part of" in the second element permitted the jury to convict applicant of felony murder even if he only knew that the co-defendant (the shooter) intended to commit "part of" felony murder – namely the predicate crime of robbery. [# 1, at 26]. Applicant maintains that under Colorado law, he could only be convicted of felony murder as a complicitor if he intended both the robbery and that someone be killed during that robbery. [*Id.* at 26-27].

### 1.   applicable federal law

The Due Process Clause requires the prosecution to prove every element of a charged offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). To demonstrate a constitutional error from a jury instruction in a state criminal trial, a habeas petitioner must demonstrate (1) an "ambiguity, inconsistency, or deficiency" in the instruction, and, (2) that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotation marks and citations omitted). *See also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (the constitutional inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."). In making this determination, the

---

[24]Colorado's complicity statutes provides: "A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." C.R.S. § 18-1-603 (2015).

jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  A "slight possibility" that the jury misapplied the jury instruction is not enough.  *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000).  Instead, the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

### 2.   state appellate court proceeding

In *Fisher I*, the Colorado Court of Appeals discussed the legal principles of complicity liability under Colorado law before addressing the merits of Applicant's claim:

> . . . Section 18–1–603, C.R.S.1999, defines complicity as follows: "A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."

> The complicity statute does not create a substantive offense. *Palmer v. People*, 964 P.2d 524 (Colo.1998). "Complicity is a theory of law by which an accomplice may be held criminally liable for a crime committed by another person if the accomplice aids, abets, or advises the principal, intending thereby to facilitate the commission of the crime." *Bogdanov v. People*, 941 P.2d 247, 250 (Colo.1997).

> However, complicity is not a theory of strict liability. It requires that a defendant have the culpable mental state required for the underlying felony and intend that his or her conduct promote or facilitate the commission of the crime by the principal. Thus, the statutory mens rea definitions in § 18-1-501, C.R.S. 1999, do not apply to complicity, and "intent," as used in § 18-1-603, C.R.S. 1999, retains its common meaning. *Bogdanov v. People*, *supra*.

> There is no requirement that the principal intend the death of the victim in felony murder; felony murder is a strict liability crime. *People v. Meyer*, 952 P.2d 774 (Colo. App. 1997). While felony murder is a strict liability crime, it requires as one of its elements that the principal commit a

predicate felony. *People v. Jones*, 990 P.2d 1098 (Colo. App. 1999). All the predicate felonies in § 18-3-102(1)(b) require proof of a culpable mental state. The underlying felony substitutes for the culpable mental state in felony murder. *People v. Priest*, 672 P.2d 539 (Colo. App. 1983).

If a complicitor has the culpable mental state for the underlying felony, he or she in fact has the same culpable mental state as the principal, thus satisfying the first part of the "intent" requirement of the complicity statute. Because no intent to cause a death is required for felony murder, the second prong of the "intent" requirement can be met if the complicitor's purpose is to promote or facilitate the commission of the underlying felony.

*Fisher I*, 9 P.3d at 1191.

The state appellate court then determined:

Applying these principles, we conclude that it is neither illogical nor illegal to give an instruction on complicity in a felony murder trial when there is evidence to support a complicity theory. This has long been the law in Colorado. *See People v. Saiz*, 42 Colo.App. 469, 600 P.2d 97 (1979). Therefore, we hold that a defendant who acts as a complicitor in the underlying felony may be held criminally liable for a death that occurs during its commission pursuant to § 18-3-102(1)(b).

Because felony murder does not require intent to cause death, the defendant's analysis, taken to its conclusion, would excuse a complicitor who aided the principal and who had the same mental culpability as the principal. This would defeat the purpose of the complicity statute which provides that a complicitor is "legally accountable as principal." Section 18-1-603, C.R.S. 1999. We cannot condone such an illogical result.
. . .

Defendant further argues that inclusion of the language "all or part of" in the complicity instruction was error. Defendant contends that this language allows conviction if the proof showed only that he intended to promote or facilitate part of the crime, the aggravated robbery, but did not intend to cause the death of the victim. This argument mirrors his previously discussed objections to the application of the complicity rules to felony murder, and for the reasons stated above, we are not persuaded.

We conclude the complicity instruction correctly informed the jury of the elements of proof required to hold defendant criminally liable for felony murder under the theory of complicity. *Bogdanov v. People*, *supra*.

(*Id.* at 1191-92).

### 3.  application of AEDPA standard of review

The state appellate court's determinations that, under Colorado law, it is proper "to give an instruction on complicity in a felony murder trial when there is evidence to support a complicity theory," *Fisher I*, 9 P3d at 1191, and that the complicity instruction "correctly informed the jury of the elements of proof required to hold defendant criminally liable for felony murder under the theory of complicity," *id.* at 1192, are determinations of state law that are binding on this federal habeas court.  *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (recognizing that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  As such, Applicant cannot show that the instruction contained "some 'ambiguity, inconsistency, or deficiency,'" as required by Supreme Court law.  *See Waddington*, 555 U.S. at 190-91.

Moreover, there is no reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crimes of felony murder and aggravated robbery beyond a reasonable doubt.

In Colorado, a person commits first degree (felony) murder when:

> Acting either alone or with one or more persons, he or she commits or attempts to commit . . . robbery, and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

Section 18-3-102(1)(b), C.R.S. (2015).  A robbery is committed when a "person knowingly takes anything of value from a person or presence of another by the use of force, threats, or intimidation."  C.R.S. § 18-4-301(1).  A robbery is aggravated when the

21

perpetrator: "is armed with a deadly weapon with intent, if resisted to kill, maim, or wound the person robbed. . ." § 18-4-302(1)(a), C.R.S. (2015), or, "knowingly wounds or strikes the person robbed . . . with a deadly weapon." § 18-4-302(1)(b) (2015).  The jury was instructed on the elements of the charged crimes under Colorado law.[25]

There was sufficient evidence at trial to support a reasonable inference by the jury that Applicant and the co-defendant (the shooter) intended to obtain drugs from the victim by using force (i.e, scaring the victim with a gun), if necessary, and that the co-defendant shot the victim with a gun during commission of the robbery.[26]  As such, Applicant's conviction for aggravated  robbery did not violate due process and, under the state felony murder and complicity statutes, Applicant was liable for any death that occurred in the commission of the aggravated robbery.

I find and conclude that the Colorado Court of Appeals' determination was not contrary to, or an unreasonable application of Supreme Court law.  The jury instruction on complicity, when considered together with the other instructions and the trial record, did not result in a violation of Applicant's federal due process rights.  Therefore, Applicant is not entitled to federal habeas relief for his second claim.

## IV.  COA & IFP

Under 28 U.S.C. § 2253(c)(2), this Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  Such a showing is made only when a prisoner demonstrates that jurists of

---

[25] See State Court R., Court File, Jury Instructions 9-10, 12-22.

[26] See id. 1/13/98 Trial Tr. at 90-109, 190-93, 205-06, 219-221, 224-26, 244; 1/14/98 Trial Tr. at 40-44.

reason would find it debatable that a constitutional violation occurred, and that the district court erred in its resolution.  Mr. Fisher has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability is denied.

Under 28 U.S.C. § 1915(a)(3), the court certifies that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  ***See Coppedge v. United States***, 369 U.S. 438 (1962).  If Mr. Fisher files a notice of appeal, he also must pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows::

1.  That the Application for a Writ of Habeas Corpus 2254 [# 1], filed on January 22, 2013, by Applicant, Michael Fisher, is DENIED;

2. That this case is DISMISSED WITH PREJUDICE;

3. That a certificate of appealability SHALL NOT ISSUE under 28 U.S.C. § 2253(c); and

4.  That leave to proceed *in forma pauperis* on appeal is DENIED without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

Dated August 26, 2015, at Denver, Colorado.

**BY THE COURT**:

Robert E. Blackburn
United States District Judge